### McDONALD v. HELVERING, Commissioner of Internal Revenue.

### No. 6227.

United States Court of Appeals for the District of Columbia.
Argued Nov. 9, 1934.
Decided Dec. 10, 1934.

H. C. Kilpatrick, of Washington, D. C., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, F. E. Youngman, and Robert H. Jackson, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

An appeal from a decision of the Board of Tax Appeals (28 B. T. A. 1234), affirming a determination by the Commissioner of Internal Revenue of a deficiency of $12,681.70 in petitioner's income tax return for the year 1927.

The question arises upon the disallowance by the Commissioner of a deduction claimed by petitioner in the amount of $25,-000, because of the payment of that sum to petitioner's divorced wife from his share of his father's estate; the payment being made by the trustee of the estate by authority of an agreement between petitioner and his divorced wife.

The controlling facts in the case are as follows:

The petitioner and his wife, Beulah McDonald, were married on April 17, 1912. They have two sons, namely, James McDonald, Jr., born September 10, 1913, and Robert Alexander McDonald, born May 12, 1915, both of whom are living.

The petitioner's father, James McDonald, Sr., died testate on January 13, 1915, while a resident of the District of Columbia, and his last will was duly admitted to probate in the District. By the terms of the will the estate was to be held by the testator's executors and trustees who were to pay certain annuities to petitioner and others until the petitioner's oldest surviving child should reach the age of thirty years, at which time the petitioner was to receive one-half of the estate and the other half was to be divided between his children.

On May 6, 1922, petitioner brought suit in the District of Columbia to have the will declared void on the ground that it violated the rule against perpetuities. The case was dismissed by the court, and an appeal was taken to this court.

On December 11, 1924, while the suit and the administration of the estate were still pending, the petitioner and his wife, with a view of effecting a permanent separation between them, entered into a written agreement for the purpose of "fixing, settling, and determining their respective property rights." The petitioner agreed, in the event of a decision in the pending suit adjudging him to be the sole heir of the estate of his father to assign and transfer for the use of

his two sons an undivided one-half interest in all of the estate which he might so inherit, and, in present terms, assigned and transferred such interest, in trust, for their use and benefit. In paragraph 7 of the agreement it was provided that the petitioner should pay to his wife the sum of $400,000 in full settlement of all claims and demands of every kind or character then existing or which but for this agreement might thereafter arise. This payment of $400,000 was to be made by petitioner to his wife when he became entitled to his share of the estate of his father, whether pursuant to the provisions of the will, or as his heir at law, or prior thereto if petitioner so elected. For the purpose of assuring the payment of such $400,000 to the wife, the petitioner "does hereby assign, transfer, and set over to the said party of the second part an interest in his share of the property of the estate of James McDonald, Sr., in the amount of four hundred thousand dollars ($400,000) and directs the trustees named in the will of James McDonald, Sr., or their successors, to pay and deliver to the party of the second part, whenever such payment may be by such trustees lawfully made, the said sum of four hundred thousand dollars ($400,000), and in the event that the trust provisions of said will shall hereafter finally be declared void or the said party of the first part shall for any other reason succeed to the estate of James McDonald, Sr., then the executor of said last will and testament and the court in which the administration of said estate is then pending are, and such executor, and such court is hereby authorized, empowered, and directed to cause to be distributed and paid to the said party of the second part the said sum of four hundred thousand dollars ($400,000)."

It may be noted at this point that by a subsequent agreement, next hereafter referred to, the provisions of this paragraph were "novated and reformed, by the elimination of" the provisions therein contained, except the provision that petitioner should pay his wife the sum of $400,000 in full settlement.

After December 11, 1924, and prior to December 21, 1925, the petitioner and his wife were divorced, and she resumed her maiden name of Beulah Martin. On December 21, 1925, the parties entered into a second written contract providing that in event the Court of Appeals should hold that one-half of the accumulated income then in the hands of the executors and trustees should be paid over to petitioner, then and in such event out of the accumulated income payable to petitioner there should be paid to Beulah Martin the sum of $150,000 to be applied as a credit on the contract dated December 11, 1924, under the terms of which she was to be paid $400,000; and after the application of such payment as a credit on the contract, Beulah Martin was to accept the sum of $25,000 per year to be paid directly to her until the balance of the $400,000 should be liquidated. The second contract also contained the following provision eliminating paragraph 7 of the first contract, as above stated: "It is further agreed in the event said decree is entered that said contract of December 11, 1924, will be novated and reformed by the elimination of all of paragraphs 5, 6, and 7, and the copy of said contract now on file with the Fulton Trust Company of New York will be withdrawn and another contract executed and filed in its stead in accordance with the stipulation herein."

On February 2, 1926, petitioner entered into a third written agreement with his former wife, Beulah Martin, which provided that there should be paid to her the sum of $100,000 (instead of $150,000 as provided by the prior agreement) out of accumulated income payable to petitioner, and that such payment should be applied as a credit on the contract entered into by and between the parties on the 11th day of December 1924, under the terms of which she was to be paid the sum of $400,000. After the application of the payment of $100,000 as a credit on said contract, Beulah Martin agreed to accept the sum of $25,000 per year without interest on such contract until the sum of $400,000 shall have been fully paid; and an order was given to the Fulton Trust Company, trustee of the estate, to pay to Beulah Martin $25,000 per annum until the balance of the sum of $400,000 should be fully paid. The payment of $25,000 per year was to be made to Beulah Martin for the period of twelve years unless within that period the one-half of the property of the estate should be delivered to petitioner, and in that event the Fulton Trust Company was then to pay to Beulah Martin such sum as would complete the total of $400,000.

On May 3, 1926, this court entered a decree in McDonald v. Maxwell, 56 App. D. C. 287, 12 F.(2d) 822, holding that upon the death of James McDonald, Sr., the petitioner took a present vested interest in the undivided one-half of the testator's estate, to

be paid to him by the executors when his oldest child living at the testator's death should reach the age of thirty years; that pending the payment to petitioner of the principal of his one-half interest in the estate the executors and trustees were to pay him in addition to the annuity provided for him by the will, the cash income accrued upon his one-half interest to date and the future cash income thereon from time to time as the same should thereafter accrue.

Pursuant to this decree there was paid to the petitioner in 1926 by the Fulton Trust Company, as trustee, a sum in excess of $500,000 representing the cash income accrued upon his one-half interest in the estate to that date as provided in the decree. Out of the $500,000 thus paid to petitioner he paid to Beulah Martin the $100,000 in cash provided for in the agreement of December 21, 1925, as modified by the agreement of February 2, 1926.

In the fiduciary return of the Fulton Trust Company, as trustee, for the year 1927 it charged itself with the full amount of income received by it in that year, and reported that one-half of this amount had been paid to the petitioner and one-half retained by the trustee for petitioner's children in accordance with the terms of the will. Out of the sum thus charged to petitioner the trustee paid the sum of $25,000 directly to Beulah Martin.

The petitioner, in filing his income tax return for the year 1927, reported as dividends the sum of $90,552.20, being the full amount charged to him as distributee in the account of the trustee as aforesaid, and claimed the following deduction, "Division of Income, former wife Beulah Martin $25,000," representing the sum which the trustee pursuant to the agreements of December 21, 1925, and February 2, 1926, had paid to Beulah Martin in that year.

The Commissioner of Internal Revenue in arriving at the petitioner's taxable net income for the year 1927 disallowed the $25,000 deduction thus taken by the petitioner on his return. Upon appeal the Board of Tax Appeals entered judgment for the Commissioner, affirming the disallowance of the deduction claimed by petitioner. The present proceeding was brought to review this decision of the Board of Tax Appeals.

We are of the opinion that the decision of the Board of Tax Appeals is correct. As appears from the statement of facts, the petitioner was entitled to be paid annually the income from the one-half of the trust estate held by the trustee under the order of this court in the case of McDonald v. Maxwell, supra. The question presented in the instant case is whether the petitioner assigned and transferred to his wife a present property ownership in petitioner's income in the amount of $25,000 a year. If such a transfer was actually made by petitioner to his wife, he would not be subject to income tax upon the transferred interest. However, we are of the opinion that no such transfer was made as would invest petitioner's wife with the actual title to any present interest or estate in any part of the corpus of the trust property or the income therefrom.

A review of the contracts executed by the petitioner and his wife discloses as their central purpose that petitioner should pay to his wife the sum of $400,000 in settlement of all claims existing between them.

In the first contract the petitioner, for the purpose of assuring the payment of such $400,000, assigned, transferred, and set over to his wife an interest in his share of the property of the trust estate. It must be observed that this assignment was not made for the purpose of extinguishing the debt of $400,000 by a transfer of an interest in the trust property. The debt was to continue, and the transfer was made as security for its payment. The transfer served no purpose except to secure the payment of that amount by petitioner to his wife. Even this transfer, however, was rescinded by the subsequent agreement between them.

In the second contract the indebtedness of $400,000 from petitioner to his wife was recognized as the basis of settlement between them. And it was provided that under certain conditions the petitioner was to pay his wife the sum of $150,000, to be applied as a credit on the contract for the payment of $400,000, as provided in the first agreement. And it was stipulated that after the application of such payment as a credit on the indebtedness the wife was to accept the sum of $25,000 per year to be paid to her directly by the trustee until the balance of the $400,000 should be liquidated.

In the third contract it was stipulated that the cash payment provided for in the preceding contract should be reduced from $150,000 to $100,000, which was to be applied as a credit upon the $400,000 debt, after which the wife was to accept the sum of $25,000 per year without interest on "said contract until the sum of $400,000 shall have been fully paid."

There is no provision in the second and third contracts, which are in fact the existing contracts between the parties, for an assignment by the petitioner to his wife of any interest in the trust fund. An order, however, was filed with the trustee to pay these sums to the wife out of the income of the husband, as it accrued in the hands of the trustee.

These provisions all implied that the debt of $400,000 first agreed upon by the parties continued to exist throughout their different transactions and that the wife in fact never relinquished her claim to the full amount of such indebtedness. This manifestly was the construction placed upon the agreement of the parties by the Fulton Trust Company, trustees, for in the accounts of that company the full amount of income due to petitioner was credited to him although in conformity with the order filed with the trustee the amount of $25,000 was paid to the wife and charged to petitioner. In other words, there was no division of the trust fund held by the trustee or of the income arising therefrom between petitioner and his wife. The petitioner therefore never divested himself of any interest in the trust fund or its income, but remained at all times the true legal owner thereof. The total income accordingly was credited to the petitioner although part of it upon his order was paid to his wife. The determination of the Commissioner was correct. Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731; Corliss v. Bowers, 281 U. S. 376, 50 S. Ct. 336, 74 L. Ed. 916; Burnet v. Leininger, 285 U. S. 136, 52 S. Ct. 345, 76 L. Ed. 665; Luce v. Burnet, 60 App. D. C. 393, 55 F.(2d) 751; Lansill v. Burnet, 61 App. D. C. 107, 58 F.(2d) 512.

The decision of the Board of Tax Appeals is affirmed.