# SHELTON *v.* KING.

### APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 180.   Argued March 11, 12, 1913.—Decided May 26. 1913.

Trustees having the power to exercise discretion will not be interfered with by a court of equity, at the instance of the beneficiaries, so long as they are acting *bona fide*.

In the absence of circumstances and conditions not provided for in the will, there being no question of perpetuities or restriction of alienation and creditors not being concerned, the court should not compel testamentary trustees to anticipate the time of payment of legacies which the testator expressly provided should be held in trust for the legatees until a specified time.

While one may not by his own act preserve to himself the enjoyment of his own property in such manner that it shall not be subject to claims of creditors or to his own power of alienation, a testator may bestow his own property in that manner upon one to whom he wishes to secure beneficial enjoyment without being subject to the claims of assignees or creditors. *Claflin* v. *Claflin*, 149 Massachusetts, 19, approved.

The courts of this country have rejected the English doctrine that

liability to creditors and freedom of alienation are necessary incidents to enjoying the rents and profits from the property by the object of bounty of a testator.

One of the highest duties resting upon a court is to carry out the intentions of a testator as expressed in valid provisions not repugnant to well settled principles of public policy.

In this case the court refuses to compel testamentary trustees to pay over legacies prior to the time specified in the will although the property bequeathed had vested in the legatees.

36 App. D. C. 1, affirmed.

THE facts, which involve the validity of a testamentary trust and the right of the beneficiaries to have the same terminated prior to the time fixed by the will, are stated in the opinion.

*Mr. Henry F. Woodard,* with whom *Mr. Arthur A. Birney* was on the brief, for appellants:

Appellants took a vested and fixed interest in their legacies, and the attempt to postpone the time for the enjoyment of the same is inconsistent with their ownership, contrary to public policy, and a restraint on the power of their free disposition or alienation, and is, therefore, void. As no other person claims any interest in the legacies appellants may rightfully waive the provision made for their benefit and have the fund paid to them at this time.

It is agreed that the legacies give appellants a vested interest in the moneys bequeathed, so that the only point in controversy is when the fund is to be paid over. *Johnson* v. *Washington L. & T. Co.,* 224 U. S. 224; *McArthur* v. *Scott,* 113 U. S. 340, 380.

Appellants took a vested and indefeasible interest in their legacies and by no known process of human laws could they be defeated in the enjoyment of the same. *Rector* v. *Dalby,* 98 Mo. App. 189.

The will makes no provision with reference to the income or accumulations. It is merely a dry, naked trust.

The fund is not given to the trustees to be by them held, but the gifts are to the children. The only function of the trustee is to lock the fund up and keep the legatees from any participation therein until the youngest reaches the age of 25.

The law is that a trust such as it was attempted to establish in this case is void, or if not void, voidable. For the English rule see *Saunders* v. *Vautier*, 4 Beav. Rep. 115; *Wharton* v. *Masterman*, App. Cas., 1895, H. of L., p. 186; *Josslyn* v. *Josslyn*, 9 Sim. 64; Marsden on Perpetuities, p. 206, citing *Hilton* v. *Hilton*, L. R. 14 Eq. 648; Gray on Perpetuities, § 120.

See, also: *Re Jacob's Will*, 29 Beav. 402; *Rocke* v. *Rocke*, 9 Beav. 66; *Jackson* v. *Marjoribanks*, 12 Sim. 93; *Craxton* v. *May*, L. R. 9 Ch. Div. 338; *Magrath* v. *Morehead*, L. R. 12 Eq. 491.

For the American rule, see 22 Am. & Eng. Ency. 735, 2d ed.; 30 Cyc. 1497; *Rector* v. *Dalby*, 98 Mo. App. 189. *Sears* v. *Choate*, 146 Massachusetts, 395, is parallel to the case at bar and sustains appellants' contention.

See also *Bennett* v. *Chapin*, 77 Michigan, 526, 537, citing *Mandlebaum* v. *McDowell*, 29 Michigan, 87; *Hall* v. *Tufts*, 18 Pick. 459; *Bank* v. *Davis*, 21 Pick. 42; *Brandon* v. *Robinson*, 18 Ves. 429; *Doebler's Appeal*, 64 Pa. St. 9; *Craig* v. *Wells*, 11 N. Y. 315; *Huber* v. *Donoghue*, 49 N. J. Eq. 125; *Sanford* v. *Lackland*, 2 Dillon, 6; *Brandon* v. *Robinson*, 18 Ves. 429; *Kimball* v. *Crocker*, 53 Maine, 263. *The Claflin Case*, 149 Massachusetts, 19, decided in 1889, does not disapprove of the *Sears Case*, 146 Massachusetts, 395; and see *Wharton* v. *Masterman*, App. Cas. 1895, *supra*.

The rule as contended for by the appellees and the authorities cited do not sustain their position.

*Mrs. Ellen S. Mussey* and *Mr. J. J. Darlington* for appellees.

MR. JUSTICE LURTON delivered the opinion of the court.

This is a bill to terminate a trust under the will of Anna Smith Mallett. The material clauses are in these words:

"3. I give, bequeath and devise to Jean Louisa, Anna Gertrude, and Robert Philo Shelton, being the children of my cousin John Consider Shelton, deceased, all of Bridgeport, Connecticut: the sum of Seventy-five Thousand dollars, being Twenty-five Thousand to each.

"10. I give, bequeath and devise all the rest, residue and remainder of my estate, real and personal wheresoever and whatsoever, of which I may die possessed to the aforesaid Jean Louisa, Anna Gertrude, and R. Philo Shelton.

## *Codicil.*

\*    \*    \*    \*    \*    \*    \*    \*

"In addition to Frank B. King, whom I have appointed executor of this, my last will and testament, I wish to appoint Wm. H. Saunders, of the firm of Wm. H. Saunders & Co., 1407 F Street, Northwest, and George W. White, Paying Teller of the National Metropolitan Bank, co-trustees with the said F. B. King,—to hold in trust the legacies devised to Jean Louisa, Anna Gertrude and Robert Philo Shelton,—said trusteeship to terminate when these legatees shall receive their portions of my estate.

"And it is my further will that these legacies to the said Jean Louisa, Anna Gertrude, and Robert Philo Shelton, shall be paid in full when the said Robert Philo Shelton shall reach the age of twenty-five years."

The complainants are the three legatees, Jean L. Shelton, now more than twenty-one years of age, and Anna Gertrude and Robert Philo Shelton, not yet twenty-one, who sue by their guardian. As the youngest of the lega-

tees was not born until 1896, the bill is premature by many years, if the trust created by the codicil is to be regarded.

That the respective legacies are vested and absolute is undeniable. No other person has any interest in them, and if the trustees should disregard the time of payment and pay over to each legatee his or her legacy when they are competent to give a valid discharge, there would be no one who could call them to account. But the trustees, having regard for the express wish of the testatrix, have refused to terminate the trust, and the object of this proceeding is to compel them to pay over the shares of the legatees as they reach the age of twenty-one years.

The objects of the bounty of the testatrix were distant kinspeople. Besides their postponed legacies they were given the residuum of the estate. What that was does not appear. It is not claimed that they are in want, nor that anything has happened since the will which was not anticipated by the testatrix, and no special reasons are claimed for terminating the trust because of new conditions which she did not take into account. In *Sears* v. *Choate*, 146 Massachusetts, 395, a situation arose after the will, which the court thought had not been contemplated by the testator, and for which no provision had been made. The court therefore saw in that a reason for terminating a like trust. In the case at bar no ground, aside from the alleged illegality of the trust, is suggested for defeating the wishes of Miss Mallett other than that it will be convenient and will save the cost of continuing the trust.

The trust is not dry, but is active, and must continue, if not invalid, until the time of payment arrives. Upon what principle, then, is a court of equity to control the trustee by compelling a premature payment? It is a settled principle that trustees having the power to exercise discretion will not be interfered with so long as they are acting *bona fide*. To do so would be to substitute

the discretion of the court for that of the trustee. Upon the same and even stronger grounds a court of equity will not undertake to control them in violation of the wishes of the testator. To do that would be to substitute the will of the chancellor for that of the testator. Lewin on Trusts, 2nd Am. Ed. 448; *Nichols* v. *Eaton*, 91 U. S. 716, 724.

There being in this case no ground for saying that there have arisen circumstances and conditions for which the testatrix made no provision, we may not control the trustee, if the postponement directed by the will does not offend against some principle of positive law or settled rule of public policy.

There is no pretense of perpetuity. Creditors are in no way concerned. If the testatrix saw fit to have this fund accumulate in the hands of trustees and thereby postpone the enjoyment of her gift, why shall her will be disregarded? The restriction she imposed may protect her bounty against ill-advised investments and waste or extravagance. She did not undertake to guard against alienation, except in so far as the alienors will take subject to the same postponement of payment. *Stier* v. *Nashville Trust Co.*, 158 Fed. Rep. 601. Nor did she undertake to protect against creditors as in *Nichols* v. *Eaton*, 91 U. S. 716. The single restriction she imposed upon her gift was that the legacies should not be paid until the time named, and in the meantime should be held in trust.

The appellants contend that whether the trust be active or dry, it is one for the benefit of the legatees, and, as no other person has any interest in the legacies, may be waived by them. For this they cite *Saunders* v. *Vautier*, 4 Beavan's Reports, 115, and *Wharton* v. *Masterman*, Appeal Cases, 1895, pp. 186, 193. In *Saunders* v. *Vautier* it was laid down, without argument, that "where a legacy is directed to accumulate for a certain period, or where

the payment is postponed, the legatee, if he has an absolute indefeasible interest in the legacy, is not bound to wait until the expiration of that period, but may require payment the moment he is competent to give a valid discharge.". The point thus decided in *Saunders* v. *Vautier* was followed in *Wharton* v. *Masterman*, where Lord Herschell said very significantly, "The point seems, in the first instance, to have been rather assumed than decided. It was apparently regarded as a necessary consequence of the conclusion that a gift had vested, that the enjoyment of it must be immediate on the beneficiary becoming *sui juris*, and could not be postponed until a later date unless the testator had made some other destination of the income during the intervening period.

"It is needless to inquire whether the courts might have given effect to the intention of the testator in such cases to postpone the enjoyment of his bounty to a time fixed by himself subsequent to the attainment by the objects of his bounty of their majority. The doctrine has been so long settled and so often recognized that it would not be proper now to question it."

The doctrine thus stated is the plain outgrowth of certain earlier English decisions in the interest of creditors, which hold, in substance, that the necessary incidents of beneficial ownership in property are liability to creditors and the power of alienation. Having concluded that a testator could not so bestow that which was his own to an object of his bounty as not to be subject to the claims of creditors of the latter, it was a logical conclusion that a testator could not postpone the payment of a vested and absolute legacy beyond the time when the legatee should be able to give a valid discharge. But the acceptance of the principle upon which *Saunders* v. *Vautier* and *Wharton* v. *Masterman* rest involves the acceptance of the limitation which the earlier English cases place upon the powers of a testator in so disposing of his prop-

erty that it may be enjoyed by the recipient without lia-
bility to creditors. The foundation of the English doc-
trine in both classes of cases is an assumption that there
is some settled principle of public policy which subjects
all property in which one has a beneficial ownership to
the claims of creditors and forbids restraint upon aliena-
tion. That this theory of public policy is not of universal
application, at least in this country, is manifest from the
numerous exemption statutes existing which protect to a
limited extent the acquisitions of a debtor from the claims
of his creditors and restrain his power of alienation in
the interest of his family. Neither do we for a moment
question the rule that one may not by his own act pre-
serve to himself the enjoyment of property in such man-
ner that it shall not be subject to the claims of creditors
or placed beyond his own power of alienation.

But a very different question is presented when we
come to the powers of a testator to so bestow that which
is absolutely his own as to secure its beneficial enjoy-
ment by an object of his bounty without being subject
to the claims of assignees or creditors. This court, and
the courts of a number of the States of the Union, have
not accepted the limitation which the English courts
have placed upon the right of testamentary disposition,
and have sustained trusts having as an object the appli-
cation of a testator's bequest to the support and main-
tenance of the recipient of his bounty. They have, there-
fore, rejected the assumption that liability to creditors
and freedom of alienation are necessary incidents to the
right to enjoy the rents and profits of real estate, or the
income from other property.

In the leading case of *Nichols* v. *Eaton*, 91 U. S. 716,
725, Mr. Justice Miller, speaking the unanimous voice
of this court, said of the English doctrine to which we
have referred, and upon which *Saunders* v. *Vautier* must
in principle rest:

"We do not see, as implied in the remark of Lord Eldon, that the power of alienation is a *necessary* incident to a life estate in real property, or that the rents and profits of real property and the interest and dividends of personal property may not be enjoyed by an individual without liability for his debts being attached as a necessary incident to such enjoyment. This doctrine is one which the English Chancery Court has ingrafted upon the common law for the benefit of creditors, and is comparatively of modern origin. We concede that there are limitations which public policy or general statutes impose upon all dispositions of property, such as those designed to prevent perpetuities and accumulation of real estate in corporations and ecclesiastical bodies. We also admit that there is a just and sound policy peculiarly appropriate to the jurisdiction of courts of equity to protect creditors against frauds upon their rights, whether they be actual or constructive frauds. But the doctrine, that the owner of property, in the free exercise of his will in disposing of it, cannot so dispose of it, but that the object of his bounty, who parts with nothing in return, must hold it subject to the debts due his creditors, though that may soon deprive him of all the benefits sought to be conferred by the testator's affection or generosity, is one which we are not prepared to announce as the doctrine of this court."

Touching the theory that public policy forbids restraints upon the disposition of a testator's bounty, the court said (p. 727):

"Nor do we see any reason, in the recognized nature and tenure of property and its transfer by will, why a testator who *gives*, who gives without any pecuniary return, who gets nothing of property value from the donee, may not attach to that gift the incident of continued use, of uninterrupted benefit of the gift, during the life of the donee. Why a parent, or one who loves another,

and wishes to use his own property in securing the object of his affection, as far as property can do it, from the ills of life, the vicissitudes of fortune, and even his own improvidence, or incapacity for self-protection, should not be permitted to do so, is not readily perceived."

In *Hyde* v. *Woods*, 94 U. S. 523, 526, this court said of *Nichols* v. *Eaton, supra:*

"In that case, the mother of the bankrupt, Eaton, had bequeathed to him by will the income of a fund, with a condition in the trust that on his bankruptcy or insolvency the legacy should cease and go to his wife or children, if he had any, and if not, it should lapse into the general fund of the testator's estate, and be subject to other dispositions. The assignee of the bankrupt sued to recover the interest bequeathed to the bankrupt, on the ground that this condition was void as against public policy.

"But this court, on a full examination of the authorities, both in England and this country, held that the objection was not well taken; that the owner of property might make such a condition in the transfer of that which was his own, and in doing so violated no creditor's rights and no principle of public policy."

If such a trust as that upheld in *Nichols* v. *Eaton,* was not in violation of principles of public policy, it must follow that one which neither restrains creditors nor alienation is not. If that case is to stand the decree of the court below was right.

The principle upon which *Nichols* v. *Eaton* stands is in line with the views of a number of other courts. Many of them are cited in that opinion, and to those we add: *Broadway National Bank* v. *Adams*, 133 Massachusetts, 170; *Mason* v. *Rhode Island Hospital Trust Co.*, 78 Connecticut, 81; *Jourolmon* v. *Massengill*, 86 Tennessee, 81; *Henson* v. *Wright*, 88 Tennessee, 501; *Brooks* v. *Raynolds*, 59 Fed. Rep. 923; *Smith* v. *Towers*, 69 Maryland, 77;

*Keyser* v. *Mitchell*, 67 Pa. St. 473; *Seymour* v. *McAvoy*, 121 California, 438; *Steib* v. *Whitehead*, 111 Illinois, 247; *Wallace* v. *Campbell & Maxey*, 53 Texas, 229; *Garland* v. *Garland*, 87 Virginia, 758; *Lampert* v. *Haydel*, 96 Missouri, 439.

*Claflin* v. *Claflin*, 149 Massachusetts, 19, was a case, on its facts, like the case at bar. The testator gave the residue of his estate to trustees in trust to sell and dispose of as follows: Ten thousand dollars to a son when of age; a like sum when he reached twenty-five years, and the balance when he should reach the age of thirty years. When the son reached the age of twenty-one the trustee paid him ten thousand dollars, and thereupon he filed a bill in equity to obtain the whole of the fund. The Massachusetts court held the trust valid and dismissed the bill. Referring to *Broadway Bank* v. *Adams*, *supra*, where a trust for support and maintenance had been upheld against creditors, the court said:

"The decision in *Broadway National Bank* v. *Adams*, 133 Massachusetts, 170, rests upon the doctrine that a testator has a right to dispose of his own property with such restrictions and limitations, not repugnant to law, as he sees fit, and that his intentions ought to be carried out unless they contravene some positive rule of law, or are against public policy. The rule contended for by the plaintiff in that case was founded upon the same considerations as that contended for by the plaintiff in this; and the grounds on which this court declined to follow the English rule in that case are applicable to this; and for the reasons there given we are unable to see that the directions of the testator to the trustees to pay the money to the plaintiff when he reached the age of twenty-five and thirty years, and not before, are against public policy, or are so far inconsistent with the rights of property given to the plaintiff that they should not be carried into effect. It cannot be said that these restrictions upon the

plaintiff's possession and control of the property are al-'
together useless, for there is not the same danger that he
will spend the property while it is in the hands of the
trustees, as there would be if it were in his own."

*Stier* v. *Nashville Trust Co.,* decided by the Sixth Cir-
cuit Court of Appeals, 158 Fed. Rep. 601, is also directly
in point.

The case of *Sears* v. *Choate,* 146 Massachusetts, 395, has
been cited as in conflict with *Claflin* v. *Claflin.* It is not.
In the former case it appeared that there had occurred cir-
cumstances which the testator had not contemplated, on
account of which the court saw no reason for not ter-
minating the trust. The case was distinguished in *Claflin*
v. *Claflin.*

In the case at bar nothing has happened since the will
which was not anticipated by the testatrix. The case
falls, therefore, precisely within the later case of *Claflin*
v. *Claflin.* There is no reason for declaring the trust
invalid. There is no higher duty which rests upon a court
than to carry out' the intentions of a testator when the
provision is not repugnant to settled principles of public
policy and is otherwise valid.

*Decree affirmed.*